UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

| | |
|---|---|
| NECHELLE LEMAGNE,<br>    Administrator of the<br>    Estate of the late Brandon Lemagne,<br><br>        Plaintiff,<br><br>v.<br><br>KENYATTA MOMON,<br><br>and<br><br>KEVIN DAVIS,<br><br>and<br><br>BRYAN HILL,<br><br>and<br><br>FAIRFAX COUNTY, VA<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 1:25-cv-783<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

COMPLAINT

Preliminary and Jurisdictional Statement

1.  After plaintiff's decedent, Brandon Lemagne, was shot and wounded by gunshots fired by another officer, Fairfax County police officer Kenyatta Momon pulled him from the car he was in onto the ground, and, as Mr. Lemagne lay motionless, harmless and with visibly empty hands, shot him in the head and killed him. All this was recorded on Officer Momon's body-cam and the body-cams of other officers on the scene. In the ensuing use-of-force investigation,

Officer Kenyatta lied about what had occurred so as to justify his actions. Fairfax County, through its police department, publicly defended his actions as appropriate and in accordance with police policy, thereby ratifying his actions on behalf of the county for which he worked. Mr. Lemagne's sister, having qualified as the personal representative of her brother's estate, brings suit against Officer Momon and Fairfax County for the unjustified killing of her brother. This case arises under the Fourth Amendment of the United States Constitution and 42 U.S.C. §1983. The Court has jurisdiction under 28 U.S.C. §1331. The Court has supplemental jurisdiction over the state law claims, which arise out of the same nucleus of operative facts as give rise to the federal claims.

Parties

2. Nechelle Lemagne is the sister of the late Brandon Lemagne. She has qualified as administrator of her brother's estate.

3. At all relevant times Kenyatta Momon was an officer of the Fairfax County Police Department and an employee of defendant Fairfax County.[1]

4. Fairfax County is a Virginia county established and maintained pursuant to Code of Va. §15.2-400 *et seq.* It maintains a police force to secure public order, whose officers are employees of the county. Through its police department, the county trains its officers and employs a system of internal investigation and, where necessary, discipline, intended to secure

---

[1]Officer Momon has been identified via multiple media reports of the death of Mr. Lemagne. If the reports are incorrect, the true identity of the intended defendant is known to his employer and himself from the averments herein and the attached stills depicting him. Any mistaken identity will be promptly cured. *See Woods v. Indiana University*, 996 F.2d 880 (7th Cir. 1993).

adherence with police policy and orders.  Appropriate disciplinary action is supposed to be taken if police officers disobey police policy or orders.  At all relevant times, Kevin Davis was the Fairfax County Chief of Police and Bryan Hill the Fairfax County Executive.  Chief Davis, County Executive Hill, or the county itself was the policy-maker for the county relative to law enforcement matters, including the ratification claim set forth herein.[2]

<u>Claim for Relief</u>

5.  On or about May 11, 2023, at around 4:00 PM, Mr. Lemagne assaulted a police officer who sought to question him about a stolen van.  Mr. Lemagne shoved the officer into the driver's seat of the officer's police cruiser, got on top of him, and reached for his gun, which was in a double-secured holster.

6.  The officer repeatedly yelled at Mr. Lemagne to stop trying to get his gun.  He called for police back up, yelling that Mr. Lemagne was trying to get his gun.

7.  At no time did the officer's gun leave its holster.  At no time did Mr. Lemagne have possession of the officer's gun.  At no time did the officer state, whether to Mr. Lemagne or on the police radio, that Mr. Lemagne had his gun.

8.  With Mr. Lemagne on top of the officer, the police cruiser, whose gear-shift handle was apparently struck as the two men struggled, went into reverse or otherwise rolled backwards dozens of feet.  It came to a stop in front of a McDonald's restaurant, hitting a car parked there.

---

[2]It being a matter of uncertainty under Virginia law which person or entity is the policymaker for Fairfax County relative to law enforcement issues within the meaning of 42 U.S.C. §1983 jurisprudence, in an abundance of caution the county, its police chief and its manager have all been named for purposes of plaintiff's ratification claim presented in this complaint.  Any superfluous defendant will be promptly voluntarily dismissed.

9.  Several police officers responded to the calls for assistance from the officer who had been assaulted by Mr. Lemagne.  Two responding officers were Christopher Grubb and defendant Kenyatta Momon.

10.  Officer Grubb ran toward the commandeered police cruiser now stationary in front of the McDonald's.  He fired about 18 shots at the cruiser from a distance of a few dozen yards.  Exhibit 1, a photograph made from a police-released video from Officer Grubb's body-cam,[3] depicts his location in relation to the cruiser and the McDonald's while he fired.  It also depicts the glass windows and the glass side entrance/exit door of the restaurant immediately behind the cruiser, and the apparent patrons to the left of the building.

11.  Officer Grubb hit Mr. Lemagne with some of his shots, and also hit the officer in the car.  Most of his shots did not strike either Mr. Lemagne or the officer.

12.  After Officer Grubb completed firing at the cruiser, Officer Momon ran up to the driver's door and pulled Mr. Lemagne out of the car, backwards.  Mr. Lemagne, who had been hit by some of Officer Grubb's bullets, fell backwards to the ground, both his hands visible and empty.  Mr. Lemagne then lay on the ground, injured, presenting no threat to anyone or anything.

13.  Police work foreseeably places officers in dangerous circumstances in which immediate action is required.  For this reason, Fairfax police officers receive extensive training on remaining calm and objective, managing their emotions and reactions, and controlling

---

[3]Police-released footage from Officer Grubb's body-cam from which this photo is taken can be viewed and listened to at https://youtu.be/mwTIJs6JhIQ.

impulsive behavior when involved in high-stress situations requiring rapid decision-making. Officer Momon received such training.

14.   On the occasion in question, Officer Momon disregarded his training, being enraged at a person who had not merely committed a crime, but had assaulted one of his fellow officers, apparently injured him, and commandeer his car.  Ignoring what was manifest before his eyes and simply retaliating against a wrongdoer who had victimized a colleague, Officer Momon disregarded the plainly evident fact that Mr. Lemagne, who was wounded, presented no threat to him or anyone else after having been pulled from the car.  As Mr. Lemagne lay on his back, unmoving, Officer Momon repeatedly shot him in the head, killing him.

15.   The following exhibits are photographs made from a police-released video including footage from Officer Momon's body-cam:[4]

*      Exhibit 2: Officer Momon starts pulling Mr. Lemagne out of the car

*      Exhibit 3: Mr. Lemagne starts falling

*      Exhibit 4: Mr. Lemagne falling, his right hand visible

*      Exhibit 5: Mr. Lemagne falling, his left hand visible

*      Exhibit 6: Officer Momon shoots Mr. Lemagne.[5]

---

[4]Police-released footage from Officer Momon's body-cam from which these photos are taken can be viewed and listened to at https://youtu.be/yZp-bu-TaUg.

[5]Officer Momon's body-cam does not depict his right hand holding his gun. The moment of shooting is ascertainable on the video, which has audio.  *See* video noted at n. 4; *see also* ¶16, *infra.*  Exhibit 6 includes police-coordinated footage from another officer's body-cam.

16.  A bystander's video and audio recording of the shooting of Mr. Lemagne may be viewed at https://www.youtube.com/shorts/W8f0HoewA_Y.  Exhibit 7, comprised of sequential photographs made from that video, show Officer Momon pulling Mr. Lemagne from the car and shooting him.

17.  Following the shooting of Mr. Lemagne, the officers present attended to their wounded colleague who had been shot by Officer Grubb.  His injuries were not life-threatening.

18.  Use-of-force inquiries are required after an officer reports a use of force, and one was made here.  As part of the inquiry, Officer Momon made material false statements in response to his questioner's inquiries:

*        He said that he did not know if Mr. Lemagne "still had" the officer's gun, since that was, he said, the last thing he heard on the radio; he also agreed that a situation is escalated when an officer hears "he's got my gun."  But at no point did the radio traffic report that Mr. Lemagne had the officer's gun.  At all times, the officer in the car was heard directing Mr. Lemagne to get off his gun or stop trying to take his gun.  Officer Momon never heard anything different, Mr. Lemagne never secured the gun, and Officer Momon never had grounds to believe he had secured it.

*        He said he could not see Mr. Lemagne's hands because Mr. Lemagne was "draped over" the officer in the car.  But Officer Momon did not shoot Mr. Lemagne while he was "draped over" the other officer.  It was only after Officer Momon pulled Mr. Lemagne out of the car, with Mr. Lemagne's outstretched arms and empty hands fully in view as he lay on the ground, that he shot him.

\*        He said he thought Mr. Lemagne was "an active assailant and was violent" at the moment he shot him.  But the video shows Mr. Lemagne falling backwards out of the car with his arms outstretched and his hands empty. He ends up on his back, immobile, following which Officer Momon shoots him in the head.

\*        He said he discharged his gun "as he was pulling [Mr. Lemagne] away," and as Mr. Lemagne  "was on the way down to the ground."  But the video shows that he shot Mr. Lemagne not as he was pulling him out of the car, but after he had done so, and after Mr. Lemagne had landed on his back on the ground, both his empty hands visible.  What the video shows is  consistent with what Officer Momon told the questioner, to the effect that while he viewed Mr. Lemagne as a threat, he was concerned not to shoot him before Mr. Lemagne was free and clear of the officer in the car, so as to avoid a bullet going through Mr. Lemagne and injuring the officer.

19.  The shooting of Mr. Lemagne generated media interest and public commentary by representatives of the county.  Police Chief Davis praised the actions of Officers Grubb and Momon.  On information and belief, following the mandated use-of-force review of Officer Momon's actions here at issue, the county, through its police department, approved and ratified his shooting of Mr. Lemagne.  On information and belief, County Executive Hill joined Chief Davis in ratifying, rather than condemning, Officer Momon's actions on behalf of Fairfax County.[6]

---

[6]Prior to filing this complaint, counsel solicited information from the county indicative of its having taken any form of adverse action toward Officer Momon for having shot Mr. Lemagne, having advised that in the face of such adverse action, no claim of county ratification of the shooting was feasible or would be made.  No such information was forthcoming, thus leading to the claim against Fairfax County, Chief Davis and County Executive Hill on a

20. By shooting Mr. Lemagne in the head as he did, Officer Momon wrongfully deprived him of his life and the ongoing enjoyment thereof. His actions were reckless, malicious, in wanton disregard of Mr. Lemagne's rights, and in disregard of long-settled law disallowing the shooting of non-threatening suspects. They were also criminal under CODE OF VA. §18.2-369(B).

21. By approving Officer Momon's shooting of Mr. Lemagne and not taking any adverse action toward him, defendants Fairfax County, Chief Davis and/or County Executive Hill ratified Officer Momon's actions here at issue, thereby taking on themselves, as policy-makers for the county, such liability as may be found to accrue to Officer Momon by reason of his actions.[7]

Causes of Action

Count I

Violation of Fourth Amendment: Defendant Momon

22. By his actions set forth above, defendant Momon violated Mr. Lemagne's right to be free from unreasonable force, mandated by the Fourth Amendment of the Constitution, thereby depriving him of his life and the enjoyment thereof. The claim for Mr. Lemagne's resulting damages survives his death pursuant to Code of Va. §8.01-25, and is properly presented by plaintiff Nechelle Lemagne, the administrator of his estate.

---

ratification theory. "The disposition of the policymaker may be inferred from his conduct after the events of that night. Following this incompetent and catastrophic performance, there were no reprimands, no discharges, and no admissions of error." *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 171 (5th Cir. 1985) (city liable by reason of after-the-fact ratification of wrongful shooting).

[7]*See* n. 2 at 3, *supra*.

Count II

Wrongful Death: Defendant Momon

23.  By his actions set forth above, defendant Momon caused the wrongful death of Mr. Johnson, giving rise to a claim under Code of Va. §8.01-50 on behalf of his statutory beneficiaries, on whose behalf plaintiff Nechelle Lemagne presents this claim.

Count III

Liability for Ratification: Defendants Fairfax County, Davis and Hill[8]

24.  By commending Officer Momon for his shooting of Mr. Lemagne rather than criticizing him for it and taking appropriate disciplinary or other corrective actions, the policy-makers relative to law enforcement matters for Fairfax County, be they Chief Davis, County Executive Hill, of the county itself, ratified his wrongful shooting of Mr. Lemagne, thereby incurring after-the-fact liability for same.  *See Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 171 (5th Cir. 1985) (city liable by reason of after-the-fact ratification of wrongful shooting).

***

Wherefore, Ms. Lemagne requests an order of this Court granting her:

*       Actual damages appropriate to the proof at trial against Officer Momon and such other defendant as the Court determines to be the policy-maker relative to law enforcement matters for Fairfax County, jointly and severally,

*       Punitive damages against each defendant appropriate to the proof at trial,

*       Damages for Mr. Johnson's statutory beneficiaries under Code of Va. §80.1-50,

---

[8]*See* n. 2 at 3, *supra.*

\*        Costs of suit, including reasonable attorney's fees, and

\*        Such other relief as is just.

Ms. Lemagne requests trial by jury.

Respectfully submitted,

NECHELLE LEMAGNE,
   Administrator of the
   Estate of the late Brandon Lemagne,

By counsel

Dated:   May 7, 2025

Counsel for Plaintiff:


//s// Victor M. Glasberg
Victor M. Glasberg, #16184
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
(703) 684-1100 / Fax: 703-684-1104
vmg@robinhoodesq.com


//s// Abigail S. Grand
Abigail S. Grand, #100578
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
(703) 684-1100 / Fax: 703-684-1104
agrand@robinhoodesq.com
**LemangeNechelle\Pleadings\2025-0507-Complaint**

-10-